[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 21, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-14754
Non-Argument Calendar

_____

BIA Nos. A97-208-898 & A97-208-899

GLAY ALEJANDRO APONTE,
LUZ MARINA CASTANO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondents.

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

(March 21, 2006)

Before CARNES, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Glay Alejandro Aponte and his wife, Luz Marina Castano (Petitioners), petition this Court for review of the Board of Immigration Appeals's (BIA) order affirming without opinion the Immigration Judge's (IJ) decision denying them asylum, withholding of removal, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment (CAT).  Petitioners are native citizens of Venezuela who remained in the United States beyond their authorized dates and the INS subsequently issued them notices to appear charging them with removability.  They then filed applications for asylum and withholding of removal based upon their political opinion and membership in a Venezuelan political group called Venezuela Libre (Free Venezuela), of which Aponte was a founding member.   At their removal hearing, petitioners stated that they suffered various threats and persecution as a result of their membership in Free Venezuela including: (1) during a Free Venezuela group demonstration in October 2001, a man approached the group and told them that they were a target for harm by the Bolivarian Circles, a reported neighborhood-based group that serves as liaison between communities and the government, (2) they were approached by two people who told them to stop what they were doing or they would kill them, and (3) while Aponte was entering the Central University of Venezuela, two people got out of a car, chased him and shouted "do something to him".  Aponte supported his testimony by stating that a co-founder of Free

2

Venezuela was kidnapped and beaten, and eventually left for the United States. They also claim that Castano was fired from her private-sector job as a result of a government order to fire her. Although the IJ found petitioners's testimony to be credible, the IJ found that they failed to carry their burden of proof with respect to asylum.

The asylum applicant carries the burden of proving asylum eligibility. *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001). To qualify for asylum, the applicant must show past persecution or a well-founded fear of persecution on account of "his or her political opinion (or other statutorily listed factor"). *Id*. at 1287. An asylum applicant may not show merely that he has a political opinion, but must show that he was persecuted because of that opinion. *INS v. Elias-Zacarias*, 502 U.S. 478, 483, 112 S. Ct. 812, 816, 117 L. Ed.2d 38 (1992). We have characterized the "persecution" requirement as an "extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1231 (11th Cir. 2005) (per curiam) (internal quotations, brackets, and citation omitted).

Because the BIA affirmed the IJ's decision without opinion, the IJ's decision is the final agency decision subject to review. *See Al Najjar*, 257 F.3d at 1284. We find that substantial evidence supports the IJ's conclusion that petitioners are

ineligible for asylum or withholding of removal. As the IJ found, the incidents petitioners offered to support their application, without more, do not establish that they were subjected to persecution but indicate that they were involved in the extremely politicized turmoil that existed in Venezuela. In fact, documents submitted into the record confirm that Venezuela is in a state of political unrest and that the petitioners stood on one side of a battle that occasionally turned violent. The record does not compel reversal of the IJ's determination that the petitioners were "simply fleeing the polarization . . . encouraged by [President Hugo] Chavez by his support of [Bolivarian] Circles, who sometime did engage in activities that were extreme." As the IJ indicated, ". . . there is no testimony that [Aponte] was actually *physically harmed*. He was never arrested. He was never tortured. He was never precluded from earning a livelihood, since persecution can include a severe economic deprivation constituting a threat to an individual's life and freedom." (emphasis added). Although there is testimony that Castano was fired from her job, there is no testimony that either of them were precluded from earning a livelihood in Venezuela. As the IJ stated, " . . . there is no economic deprivation in this case. There is no physical harm in this case. There was no confinement. There was no torture." Although the IJ found no evidence of psychological infliction of harm, there is record evidence that Castano sustained a nervous breakdown because of these incidents. "But the mere fact that [Castano] found this

4

understandably distressing does not indicate that the event itself was an infliction of psychological torture." The IJ goes on to state: "There is no question in my mind that the [Petitioners's] fear was subjectively genuine, but [they] must also meet the burden to show that [their] fear was objectively reasonable." The IJ correctly determined that there was not "a concerted effort to punish [the petitioners] for [their] political opinion."

Substantial evidence also supports the IJ's determination that the petitioners had not established a well-founded fear of future persecution if they returned to Venezuela. Aponte testified that, after he fled Venezuela and remained in the United States for one month, he returned to Venezuela for two weeks without incident. Aponte's mother, who also participated in Free Venezuela public demonstrations, still remains in Venezuela and has not experienced any threats or harm from the government or the Bolivarian Circles. Based on this evidence, the record does not compel reversal of the IJ's finding that the petitioners do not have an objectively reasonable fear of future persecution.

Since the petitioners did not show that they suffered past persecution or that they have a well-founded fear of future persecution based on a protected ground, they did not establish eligibility for asylum. The petitioners also failed to establish eligibility for withholding of removal because they did not meet the lower standard for asylum. *See Al Najjar,* 257 F.3d at 1292-93. Petitioners did not raise any

arguments in their brief with regard to their denial of CAT relief and, thus, we find that they have abandoned that issue. *Al Najjar*, 257 F.3d at 1283 n.12.

**PETITION DENIED**.